**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| Belinda Wheeler, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. _____ |
| - against - | Class Action Complaint |
| Panini America, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.    Panini America, Inc. ("Defendant") manufactures, labels, markets, and sells trading cards promising that some packs contain valuable items under the Panini brand (the "Product").

## I.    RAPID GROWTH OF TRADING CARD INDUSTRY

2.    The past decade has seen an expansion of the market for trading cards.

3.    For example, Michael Jordan's rookie card, valued at $39,600 in January 2020, increased to $720,000 within a year.

4.    Trading card companies increased profits and expanded as well.

5.    One auction house specializing in collectibles had revenues under a million dollars several years ago.

6.    In 2020, that company reached $100 million in revenue in 2020, with a forecast of $400 million for 2021.

7.    Consumer demand is so intense that customers regularly wait for hours outside stores in terrible weather to get the newest cards.

## II.   REDEMPTION CARDS LEAD TO INCREASED DEMAND

8.     A variety of methods are used to increase consumer demand, but the most successful is the use of redemption cards.

9.     A redemption card is a "wildcard" included in each pack that allows its holder, through use of a special code, to obtain a random specialty card.

10.    The Product's packaging highlights the redemption cards to induce purchasing.

11.    Redemption cards tout their special nature, rarity, value, and the possibility that the item will be autographed by the athlete or entertainer.

12.    The value of a redemption card can range from $1.00 to $50,000.00.

13.    Redemption cards are promoted across all types of cards Defendant sells, including basketball and football cards.

14.    Federal and state law require that a contest which offers a chance at winning a thing of value permit any person to enter, regardless of whether they purchased the item in question ("No Purchase Necessary" or "NPN").

15.    Where such a contest does not offer non-purchasers the option to enter, it is considered an unlawful lottery, prohibited by federal and state law.

16.    NPN instructions are required to be equally prominent to other methods of entry and cannot place a non-purchaser at a disadvantage relative to a purchaser.

17.    Defendant fails to display the NPN information in a clear and conspicuous manner to non-purchasers across the range of cards it sells.

18.    For example, this Flux 2020-2021 Inaugural Edition box emphasizes the inclusion of redemption cards through statements such as "3 Cards Per Pack," "6 Packs Per Box," and "2 Blaster Exclusive Mojo Prizms! Per Box, On Average"



19.   The fine print at the bottom on the front of the box states, "NO PURCHASE NECESSARY – See Pack for Details."

20.   The side and other panels of the Product do not include the NPN instructions.



21.     The result is that potential entrants to the contest are required to purchase the Product to obtain the NPN instructions on the packs.

 

22.     Someone who wishes to enter the contest could not purchase the Product, obtain the NPN instructions from the pack, and then return the Product, because returning opened trading card merchandise is not allowed by merchants.

23.     By requiring purchase of the Product and rendering it difficult to impossible for non-purchasers to obtain the redemption cards, consumers are misled to purchase items they otherwise would not have to, at higher prices.

24.     The same representations and omissions are present across the varieties of cards sold by Defendant.

## III.   CONCLUSION

25.     Defendant makes other representations and omissions with respect to the Product and contest which are unlawful, false or misleading.

26.     Consumers erroneously believe their only way to enter the contest and have an equal chance at winning is through purchasing the Product.

4

27. The result is consumers purchase more of the Products, at higher prices, than they otherwise would have, to have a greater chance at obtaining the valuable redemption cards.

28. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product and contest, relative to itself and other comparable products or alternatives.

29. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

30. This is because Plaintiff did not have to purchase the Products to enter the contests, but due to the practices described here, was not given another reasonable option.

31. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

32. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

33. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $15 per box and $5 per pack, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

34. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

35. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

36. Plaintiff Belinda Wheeler is a citizen of District of Columbia.

37.    Defendant Panini America, Inc. is a Delaware corporation with a principal place of business in Irving, Dallas County, Texas.

38.    The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

39.    The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, with the representations described here, in thousands of locations, in the states covered by Plaintiff's proposed classes.

40.    The Product is available to consumers from third-party retail stores, big box stores, department stores, hobbyist or card stores, and Defendant's website.

41.    Venue is proper in this District because a substantial part of the events or omissions giving rise to these claims occurred in the District of Columbia, i.e., Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

Parties

42.    Plaintiff Belinda Wheeler is a citizen of Washington, District of Columbia.

43.    Defendant Panini America, Inc. is a Delaware corporation with a principal place of business in Irving, Texas, Dallas County.

44.    The parent company of Defendant is a Panini S.p.A., an Italian company headquartered in Modena, Italy, named after the Panini brothers who founded it in 1961.

45.    The company produces books, comics, magazines, stickers, trading cards and other items through its collectibles and publishing subsidiaries.

46.    Over 10 years ago, Panini acquired the second-oldest trading-card company, Donruss, and formed "Panini America."

47.   Panini has exclusive licenses with major athletes and sports leagues in the United States.

48.   Americans trust the Panini brand to be fair with them, because it has built up a reservoir of good will, especially when it comes to a contest.

49.   The Product is available to consumers from third-party retail stores, big box stores, department stores, hobbyist or card stores, and Defendant's website.

50.   Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Walmart, Target, Defendant's website, and card stores, at locations including within the Washington Metropolitan Area and elsewhere on the East Coast between 2021 and 2022, and/or among other times.

51.   Plaintiff believed and expected purchasing the Product was necessary to gain entry to the contest and gave the purchaser a greater chance at winning the contest because that is what the representations and omissions said and implied.

52.   Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

53.   Plaintiff bought the Product at or exceeding the above-referenced price.

54.   Plaintiff would not have purchased the Product if she knew the representations and omissions were false, unlawful or misleading or would have paid less for it.

55.   Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

56.     The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false, unlawful or misleading statements and omissions.

57.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations about the contests are fair and lawful, consistent with their abilities, attributes, and/or composition.

58.     Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar trading cards offering chances to win valuable items, because she is unsure whether those representations are truthful.

<u>Class Allegations</u>

59.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **District of Columbia Class:** All persons in the State or federal district of District of Columbia who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Texas, Kansas, North Dakota, Arkansas, Iowa, Utah, West Virginia, Virginia, South Carolina, Georgia, Alabama, Kentucky, Idaho, Alaska, Hawaii, New Mexico, Maine and Montana who purchased the Product during the statutes of limitations for each cause of action alleged.

60.     Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading, unfair or unlawful, and if Plaintiff and class members are entitled to damages.

61.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, unlawful or deceptive representations, omissions, and actions.

62.     Plaintiff is an adequate representative because her interests do not conflict with other members.

63.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

64.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

65.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

66.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Consumer Protection Procedures Act, D.C. Code Sec. 38-3901<br>et. seq.<br>(On Behalf of the District of Columbia Class)</u>

67.    Plaintiff incorporates by reference all preceding paragraphs.

68.    Plaintiff believed purchasing the Product was necessary to gain entry to the contest and gave the purchaser a greater chance at winning the contest.

69.    Defendant's false, unlawful or deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

70.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

71.    Plaintiff relied on the representations to believe purchasing the Product was necessary to gain entry to the contest and gave the purchaser a greater chance at winning the contest.

72.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

73.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

74.    The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

75.    Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

76.    As a result of Defendant's use of artifice, unfair or deceptive acts or business practices, each of the members of the Consumer Fraud Multi-State Class sustained damages.

77.    Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

<u>(On Behalf of Both Classes)</u>

78.    The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that purchasing the Product was necessary to gain entry to the contest and gave the purchaser a greater chance at winning the contest.

79.    Defendant directly marketed the Product to Plaintiff and consumers through its

advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

80.   Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

81.   Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that purchasing the Product was necessary to gain entry to the contest and gave the purchaser a greater chance at winning the contest.

82.   Defendant's representations affirmed and promised that purchasing the Product was necessary to gain entry to the contest and gave the purchaser a greater chance at winning the contest.

83.   Defendant described the Product so Plaintiff and consumers believed purchasing the Product was necessary to gain entry to the contest and gave the purchaser a greater chance at winning the contest, which became part of the basis of the bargain that it would conform to its affirmations and promises.

84.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

85.   This duty is based on Defendant's outsized role in the market for this type of Product, one of the world's most esteemed purveyors of trading cards.

86.   Plaintiff recently became aware of Defendant's breach of the Product's warranties.

87.   Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

88.   Plaintiff hereby provides notice to Defendant that it breached the express and implied

warranties associated with the Product.

89.    Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

90.    The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

91.    The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if purchasing the Product was necessary to gain entry to the contest and gave the purchaser a greater chance at winning the contest.

92.    The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected purchasing the Product was necessary to gain entry to the contest and gave the purchaser a greater chance at winning the contest, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

93.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

(On Behalf of Both Classes)

94.    Defendant obtained benefits and monies because the Product and contest was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the classes;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   March 20, 2022

                                        Respectfully submitted,

                                        /s/Scott C. Borison
                                        Scott C. Borison
                                        Borison Firm, LLC.
                                        1400 S. Charles St.
                                        Baltimore MD 21230
                                        Tel: (301) 620-1016
                                        scott@borisonfirm.com

                                        Steffan T. Keeton*
                                        The Keeton Firm LLC
                                        100 S Commons Ste 102
                                        Pittsburgh PA 15212
                                        Tel: (888) 412-5291
                                        stkeeton@keetonfirm.com

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

*Pro Hac Vice forthcoming